UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SCOTT WILLIAM CARTLIDGE,
    Plaintiff,

v.     Case No.: 1:24cv82/MW/ZCB

LELAND DUDEK,
Acting Commissioner of Social Security,
    Defendant.[1]
_____/

## REPORT AND RECOMMENDATION

This is a Social Security appeal filed under 42 U.S.C. § 405(g). Plaintiff Scott Cartlidge seeks judicial review of the Social Security Commissioner's decision denying disability benefits. Because substantial evidence supports the Commissioner's decision, it should be affirmed.

### I. Procedural History

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income with an alleged onset date of May 23, 2013. (Tr. 18).[2] The Social Security Administration denied his

---

[1] Leland Dudek was recently appointed the Acting Commissioner of the Social Security Administration. As such, he is automatically substituted as Defendant under Fed. R. Civ. P. 25(d).
[2] Citations to the administrative record filed by the Commissioner are designated as "Tr." The page numbers cited are those found on the

1

application. (Tr. 206-17, 222-35). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on November 25, 2020. (Tr. 71-98). The ALJ issued a decision on February 19, 2021, finding Plaintiff was not disabled. (Tr. 180-94). Plaintiff requested review by the Appeals Council. On June 9, 2022, the Appeals Council remanded the case. (Tr. 199-205).

A second hearing was held on March 7, 2023, before a different ALJ. (Tr. 40-70). After the second hearing, the ALJ found Plaintiff was not disabled and issued a written decision to that effect on November 1, 2023. (Tr. 22-30). Plaintiff requested review by the Appeals Council. This time, the Appeals Council denied review. (Tr. 1-7). Thus, the ALJ's November 1, 2023, decision stands as the final decision of the Commissioner. Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II. The Social Security Administration's Sequential Evaluation Process

The Social Security Administration uses a five-step sequential process to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4),

---

bottom right corner of each page of the transcript, rather than the numbers that were assigned by the Court's electronic docketing system.

416.920(a)(4). First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(1), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c).

Third, the Commissioner evaluates whether the claimant's severe impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity permits performance of his or her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the

3

performance of any other work in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that he cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III.  The ALJ's Decision

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 20, Finding 2). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "dysfunction of major joints; depressive, bipolar, and related disorders; personality disorders; anxiety and obsessive-compulsive disorders; posttraumatic stress disorder (PTSD);

diverticulosis; hemorrhoids; hypertension; and hyperlipidemia." (Tr. 21, Finding 3).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21, Finding 4). Proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work, with several physical and mental limitations. (Tr. 23, Finding 5). Relevant to this appeal are the mental restrictions in the residual functional capacity. Those are as follows:

> The claimant is limited to performing simple, routine tasks and making simple work-related decisions. The claimant is limited to occasional interaction with supervisors, coworkers, and the public. The claimant is limited to tolerating few changes in a routine work setting.

(Tr. 23, Finding 5). Based on Plaintiff's residual functional capacity, the ALJ found that Plaintiff was able to perform his past relevant work as a janitor. (Tr. 28, Finding 6).

Although the ALJ could have stopped at step four, he continued to step five and made an alternative finding[3] that even if Plaintiff could not perform his past relevant work as a janitor, he was not disabled because there were other jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). Based on these findings, the ALJ concluded that Plaintiff was not disabled from May 23, 2013, through the date of the ALJ's decision. (Tr. 30, Finding 7).

## IV. Standard of Review

When this Court reviews the decision of a Social Security ALJ, the question is not whether the Court would have reached the same conclusion had it been in the ALJ's shoes. Instead, the Court must "give substantial deference" to the ALJ's decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). Thus, this Court's task is limited to

---

[3] Plaintiff seems to suggest that it was improper for the ALJ to make an alternative finding at step five after concluding Plaintiff could return to past relevant work at step four. (*See* Doc. 13 at 14-15). There was, however, nothing improper about the ALJ making an alternative finding at step five. It is a common practice that promotes judicial efficiency. *See, e.g.*, *Davis v. Berryhill*, No. 4:17-CV-71, 2018 WL 1470256, at *3 (M.D. Ga. Mar. 26, 2018) (affirming ALJ's decision, which included an alternative finding at step five); *McCorvey v. Saul*, No. 1:20-00277, 2021 WL 431740, at *6 (S.D. Ala. Feb. 8, 2021) (same); *Rivera-Hernandez v. Comm'r of Soc. Sec.*, No. 6:12-cv-198, 2013 WL 1104741, at *3 (M.D. Fla. Mar. 18, 2013) (same).

determining whether the ALJ's decision was "supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It requires "more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (cleaned up). This means that the Court should uphold the ALJ's decision if it is "supported by substantial evidence . . ., even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up). When conducting the substantial evidence review, the Court does not "decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up).

## V. Discussion

In his appeal of the ALJ's decision, Plaintiff challenges the ALJ's step four finding that Plaintiff had the residual functional capacity to perform his past work as a janitor, as well the ALJ's alternative step five finding that there are other jobs in significant numbers in the national economy that Plaintiff could perform. The crux of Plaintiff's argument is

that the ALJ's residual functional capacity determination was not supported by substantial evidence because it failed to account for Plaintiff missing approximately three days of work per month due to his mental health issues. As support for this argument, Plaintiff has pointed to his hearing testimony where he testified that his bipolar disorder caused him to cancel three appointments a month. (Doc. 13 at 15-16). Plaintiff has extrapolated from that testimony to reach the conclusion that he would miss three days of work per month. (*Id.* at 16).

Defendant, on the other hand, has argued that substantial evidence in the record supports the ALJ's decision. (Doc. 15 at 5-6). As explained below, the Court agrees with Defendant.

Plaintiff's argument is based heavily on his hearing testimony. In that testimony, Plaintiff said that he had good days and bad days due to his mental health issues. (Tr. 52-53). According to Plaintiff's testimony, these bad days caused him to reschedule approximately three appointments with the Department of Veterans Affairs (VA) each month. (Tr. 53-54). Plaintiff explained that he did this because on his bad days, he does not "want to be around a lot of people and the noise." (Tr. 54). Later in the hearing, Plaintiff's attorney asked the vocational expert

8

whether a person who misses three days of work per month could sustain employment. (Tr. 67). The vocational expert responded, "No." (*Id.*).

As part of the residual functional capacity analysis in this case, the ALJ considered Plaintiff's hearing testimony and evaluated it against the other evidence in the record. The ALJ recognized that Plaintiff testified that he had "mood swings, irritability, depression, and anxiety." (Tr. 23). The ALJ also recognized that Plaintiff testified as to good days and bad days, and the ALJ's opinion considered Plaintiff's testimony that the bad days caused him to reschedule approximately three appointments per month. (*Id.* at 23-24). The ALJ then evaluated Plaintiff's testimony against the evidence in the record and found his testimony was "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23). The ALJ further explained as follows:

> [Claimant] has asserted that the primary basis for his application is mental health issues. The record shows mental health treatment but does not establish the continued presence of symptoms of such severity as to prevent the performance of all work. The evidence primarily shows that he experiences depression and anxiety. However, mental health examination findings have been mostly benign and do not show significant ongoing abnormalities. He is not shown to have significant difficulties with cognitive functioning, reality perception, memory, attention and concentration, insight and judgment, violent ideations, or psychotic processes. His level of mental impairment appears to be no

9

> more than mild to moderate in degree, and he has been given the benefit of the doubt in the assessment of moderate mental health limitations in the "paragraph B" criteria set forth above. Notably, there is no opinion of record which suggests that he is unable to perform even simple unskilled tasks. The medical evidence of record does not fully support his subjective complaints, and the residual functional capacity assessment set forth above contains restrictions on the type of work he is to perform, the social interaction he is to engage in, and the level of change that is to be present to account for his mental limitations.

(Tr. 27).

The ALJ then proceeded to thoroughly review the record evidence. In doing so, the ALJ noted that Plaintiff's "Global Assessment of Functioning" scores[4] were mainly indicative of mild symptoms, with one score indicative of moderate symptoms. (Tr. 24). The ALJ cited to years of treatment notes that routinely reflected overall normal findings. (Tr. 24-26). Moreover, the ALJ discussed the opinions of multiple state agency medical consultants who opined that Plaintiff "was capable of performing simple tasks, sustaining work activity at an appropriate pace, relating adequately with others in a work setting, and adapting to most

---

[4] "The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults." *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006).

changes and task demands on a sustained basis." (Tr. 25). None of the state agency consultants opined that Plaintiff was limited in how many days Plaintiff could work per month.

It bears mentioning that the ALJ found greater limitations than those recommended by the state agency consultants. (Tr. 24-27). In other words, the ALJ made "claimant favorable" determinations in finding that Plaintiff was *more* limited than assessed by the state agency consultants. *See Trimble-Casado v. Berryhill*, No. 1:17cv145/MW/GRJ, 2018 WL 4291795, at *8 (N.D. Fla. Aug. 22, 2018), *adopted by* 2018 WL 4289623 (recognizing the ALJ made "claimant favorable" findings by assessing further limitations than those found by the state agency consultants and this supported the ALJ's ultimate residual functional capacity conclusion). The ALJ accounted for such additional limitations by including more severe mental limitations in the residual functional capacity than those recommended by the state agency consultants.

Although Plaintiff testified that his mental health issues would require him to miss about three days of work per month, the ALJ was not required to credit Plaintiff's testimony in that regard. Rather, an ALJ may discredit a claimant's testimony so long as the ALJ "articulate[s]

explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In this case, the ALJ thoroughly discussed—as explained above—the evidence in the medical record and explained that the "medical evidence of record does not fully" support Plaintiff's testimony. (Tr. 27). Moreover, the Court has been unable to find (and Plaintiff has not identified[5]) any opinions or other evidence in the medical record that support Plaintiff's testimony that his mental health condition would cause him to miss three days of work per month. Accordingly, the Court rejects Plaintiff's argument that the ALJ's decision was not supported by substantial evidence. *See Trimble-Casado*, 2018 WL 4291795, at \*\*6-8 (finding ALJ's decision was supported by substantial evidence and finding that claimant's testimony that she would miss several days a month due to her "bad days" was inconsistent with record);

---

[5] The parties were previously informed that they must cite the specific page number in the record in support of any factual contentions. (Doc. 7 at 3, 4). Aside from his own testimony, Plaintiff has cited no portion of the record (such as medical opinions) regarding the inability of Plaintiff to work a specific number of days per month. *See, e.g.*, *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 825 (11th Cir. 2021) (affirming the ALJ's decision when the claimant "provide[d] no citation to the record" in support of his argument that the ALJ overlooked medical opinions by several doctors).

*see also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398, 2022 WL 61178, at **3-4 (M.D. Fla. Jan. 6, 2022) (finding that substantial evidence supported ALJ's conclusion that claimant was not disabled despite his claim that his bipolar disorder would cause him to miss four days of work per month).

## VI.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1) The Commissioner's decision be **AFFIRMED**.

2) The Clerk of Court be directed to enter final judgment for the Commissioner under sentence four of 42 U.S.C. § 405(g).

At Pensacola, Florida, this 2nd day of May 2025.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.